KUTTROFF, PICKHARDT & Co. (INC.) *v.* UNITED STATES (No. 2356).[1]

CONSTRUCTION, SECTION 501, TARIFF ACT OF 1922—FINDING IN WRITING BY BOARD IN APPRAISEMENT APPEALS.

The direction of section 501, tariff act of 1922, to the board of three general appraisers in appraisement appeals to "state its action in a written decision to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor" is for the purpose of enabling the Court of Customs Appeals to review the decision "upon a. question or questions of law only," and is mandatory. The cause is remanded for such written finding to be made.

United States Court of Customs Appeals, June 9, 1924.

APPEAL from Board of United States General Appraisers, Reappraisement Circular No. 34428.
[Remanded.]

*Barnes, Wilson & Halstead* (*Frank M. Halstead* and *Albert MacC. Barnes* of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General (*Samuel M. Richardson,* special attorney, of counsel), for the United States.
*Marion De Vries* (*De Vries, Doherty, Davis & Lamb* of counsel) amicus curiæ.

[Oral argument May 22, 1924, by Mr. Halstead and Mr. Hoppin, and May 23 by Mr. De Vries.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BARBER, Judge, delivered the opinion of the court:
This is one of the so-called "dye cases." The others are Nos. 2347, 2365, and 2366.

The appellant is the same in each case. The cases were argued in .connection with each other, each, however, being separately presented by the appellant and appellee.

Attorneys for American manufacturers of coal-tar products appearing as amicus curiae, included in one brief and argument the consideration of the issues raised in all these cases.

---

[1] T. D. 40269.

The merchandise involved in this particular case is a coal-tar dye known as crystal violet extra. It was entered at a value of $3 per pound and by the local appraiser was appraised at a value of $3.75 per pound, presumably as being competitive with a dye of domestic manufacture.

The case involves the consideration of paragraph 28, section 501 of part 2, and section 402 of Title 4 of the tariff act of 1922. Paragraph 28 relates to the classification of the merchandise. Section 501 of part 2 regulates appraisements, procedure thereunder, and appeals therefrom. Section 402 of Title 4 contains definitions of foreign or export value, United States value, cost of production, and American selling price, with directions as to which may apply in a given case, and provisions for the collection of duties based thereon.

The material provisions of paragraph 28 are that the merchandise here shall be dutiable at—

45 per centum ad valorem based upon the American selling price (as defined in subdivision (f) of section 402, Title IV) of any similar competitive article manufactured or produced in the United States, and 7 cents per pound: *Provided*, That for a period of two years beginning on the day following the passage of this act the ad valorem rate of duty shall be 60 per centum instead of 45 per centum. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, as defined in subdivision (d) of section 402, Title IV. For the purposes of this paragraph any coal-tar product provided for in this act shall be considered similar to or competitive with any imported coal-tar product which accomplishes results substantially equal to those accomplished by the domestic product when used in substantially the same manner: *Provided*, That no duty imposed under this paragraph shall be increased under the provisions of section 315: *Provided*, That the specific duty of 7 cents per pound herein provided for on colors, dyes, or stains, whether soluble or not in water, color acids, color bases, color lakes, leuco compounds, indoxyl, and indoxyl compounds, shall be based on standards of strength which shall be established by the Secretary of the Treasury, and that upon all importations of such articles which exceed such standards of strength the specific duty of 7 cents per pound shall be computed on the weight which the article would have if it were diluted to the standard strength, but in no case shall any such articles of whatever strength pay a specific duty of less than 7 cents per pound.

The paragraph also provides that the Secretary of the Treasury shall make regulations to carry out its purpose and shall adopt standards of strength for each dye conforming as nearly as practicable to the commercial strength of dyes in ordinary use in the United States.

Such regulations had not been made at the time the merchandise in this case was imported.

The provisions of section 501 regulating appraisement necessary of consideration are that the decision of the local appraiser shall be final unless appealed from; that upon such appeal, which shall be transmitted to the Board of General Appraisers, a single general appraiser shall hear the case upon reasonable notice to the parties

and their attorneys, and that his decision shall be final and conclusive upon all parties—

unless within 10 days from the date of the filing of the decision with the collector an application for its review shall be filed with or mailed to said board by the collector or other person authorized by the Secretary of the Treasury, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee or his agent or attorney, with the collector, by whom the same shall be forthwith forwarded to the Board of General Appraisers. Every such application shall be assigned by the Board of General Appraisers to a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and, after argument on the part of the parties if requested by them or either of them, shall affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings, and shall state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor. The decision of the Board of General Appraisers shall be final and conclusive upon all parties unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only within the time and in the manner provided by section 198. of an act entitled "An act to codify, revise, and amend the laws relating to the judiciary," approved March 3, 1911.

Section 402 of Title IV provides (*d*) that the United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed, ready for delivery in the principal markets of the United States, to all purchasers at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with certain allowances made for certain costs, expenses, and other items therein mentioned in detail.

The same section (*f*) defines the American selling price to be the price of any article manufactured or produced in the United States, including cost of containers, charges, and expenses, and other items incident to placing the merchandise in condition, packed, ready for delivery, at which said article is freely offered for sale to all purchasers in the principal markets of the United States in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer would have received or was willing to receive therefor, when sold in the ordinary course of trade and in the usual wholesale quantities at the time of the exportation of the imported articles.

The importer appealed from the appraisal of the local appraiser, following which the single general appraiser in due course took evidence, which is embodied in some 90 pages of the record, upon which he found "that the actual dutiable value or wholesale price of the merchandise at the time of exportation, in the principal markets of the country from whence exported," was the entered value thereof and that such was its dutiable value.

The Government thereupon appealed to reappraisement, which was argued and submitted to a board of three general appraisers. Its decision was as follows:

The board has heard argument and considered the cases each upon the record made before the single general appraiser. We are unable to see the materiality of all the matters discussed or to render a decision in accordance with some of the reasoning either of the single general appraiser or the several parties heard in the discussion. If the question of burden of proof ever entered into the case at all, it was removed when the hearing of the cases began with the presumption of correctness in favor of the action of the appraiser. Inasmuch as both parties introduced testimony, the question of fact to be decided is whether or not, considering all the testimony, the weight of the evidence justified the decisions of the single general appraiser. We can not so hold. In the conflict of the testimony the board does not discover weight enough to overturn the presumption in favor of the action of the appraiser, the appraiser and examiner not being sworn in the hearings. While it is true that the method of valuation is new to our law, the application of that method is to be judged and the facts connected with it and produced under it must be weighed according to the long-established and well-known rules of evidence and construction of statutes. The cases presented merely the trials of cases at law, all of which are important and in the determination of which it is important to observe the ordinary rules. It is unnecessary to decide the question, so much discussed, as to whether there can be such a market as is contemplated by the law in which the American selling price can be applied as a rule of measurement, without proving that that market actually functions by sales and deliveries, because the action of the appraiser, which presumes knowledge of the facts and compliance with the law, has not been overturned by the evidence in the cases.

Therefore the decisions of the single general appraiser are reversed, and an order will issue sustaining the appraised value in each case.

The essential part of its judgment order upon this decision contained a finding that the actual dutiable value or wholesale price of the merchandise at the time of exportation was the appraised value which was found to be the dutiable value thereof.

In passing we note that the above-quoted decision of the board barring the caption is verbatim et literatim with its decision in case No. 2366, involving, it is claimed, different issues.

From the record it appears that, at the hearing before the single general appraiser, the importer assumed the burden of going ahead with its proof and offered evidence tending to show that the merchandise was entered at what it conceived to be the value thereof based on its understanding of the American selling price of what it considered to be a similar product manufactured in the United States called crystal violet (6 *b*) and which it had purchased from a domestic producer. It also gave evidence tending to show at what price it sold crystal violet extra in the United States, as tending to show the United States value of the importation at the time it was made.

We are unable to find, from the record of the proceedings before the single general appraiser, that there was any question raised

before him as to the burden of proof, which seems, from the decision of the board, to have been one of the issues it thought to be presented to it for determination.

We understand from the record that the entered value, $3 per pound, was advanced by the local appraiser by adding thereto 25 per cent thereof. Upon what theory this was done does not definitely appear. His notation on the invoice, which is the only statement purporting to come from him on the subject is, "Appraised at $3.75 lb Sec 402 Par F (American Selling Price) 1 1/9 times standard." What "standard" or what "American selling price" is referred to he does not state.

The Government admits that the appraisal of the local appraiser was too high in view of the testimony of record.

Importer's first challenge to the decision of the board of three general appraisers is that it has not complied with the mandate of section 501 in that it has failed to "state its action in a written decision to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor."

We think this objection is well taken and that it disposes of the issues now before us so far as can be at this time. The statute clearly contemplates that the decision of the board when appealed from shall come before this court for review, in the language of the statute, "upon a question or questions of law only," and that we are entitled to know its findings of fact in order to dispose of such questions of law as may be raised for our consideration. The decision of the board does not state the facts in issue.

It is unnecessary to enter into any extended discussion of this question. Reference may be had to Cyc. vol. 38, p. 1593 et seq., where the subject is fully considered.

A consideration of all the statutes hereinbefore quoted or referred to points inevitably to the conclusion that facts should be found by the board and its conclusions of law thereon stated before this court should be called upon to determine the issues that may be involved.

Appeals from reappraisement to this court are new in customs law and it is important at the outset to establish a procedure that will be for the manifest advantage of litigants, the board, and this court.

We do not undertake to mention all the issues on which the board should make its findings of facts in this case. Of course, they should be upon the material issues.

Upon the record here, so far as we have examined the same, it would seem material to know whether the dutiable value of the merchandise as ascertained by the board is based upon the American selling price, the United States value, or some other value thereof authorized by statute.

If upon the American selling price, what was the domestic dye found by the board to be competitive with the imported dye, the nature of its competition, whether commercial or otherwise, and the rule adopted by the board in determining the American selling price of the importation based upon the ascertained results of such competition, including a finding as to whether, if the competition is determined by comparative tinctorial strength, the selling price of the competitive domestic dye is increased or diminished as the case may be, by the factor of strength in order to ascertain the American selling price of the importation.

These suggestions are based upon claims made on argument of the cases now before us.

Without undertaking to decide what should be the procedure in such cases before the board, it may be well to say that it will probably tend to simplify the work both of the board and of this court if counsel on each side will submit to the board their proposals for findings of facts which may, of course, be allowed, modified, or denied by the board as it may see fit. But whether so tendered or not, the duty of making the findings is by the statute mandatorily imposed upon the board.

This case is therefore remanded to the Board of General Appraisers to enable it to make its findings of fact and conclusions of law as in the statute provided. *Remanded.*